448 P.2d 474 (1968)
79 N.M. 973
Aurelio M. HERNANDEZ and Adelina V. Hernandez, Plaintiffs-Appellants,
v.
S.I.C. FINANCE CO., Defendant-Appellee.
No. 8667.
Supreme Court of New Mexico.
December 9, 1968.
Thomas B. Root, Ellis J. French, Albuquerque, for appellants.
Sheehan, Duhigg, Smith & Cronin, Albuquerque, for appellee.

OPINION
MOISE, Justice.
This is a declaratory judgment action wherein the plaintiffs-appellants sought adjudication of their rights to possession of certain furniture which was set forth in a security agreement executed by them to defendant-appellee in connection with a loan. Appellee counter-claimed seeking possession of the furniture to satisfy the balance of the indebtedness remaining unpaid.
The trial court found that plaintiffs had borrowed money from defendant and, being unable to pay the indebtedness when due, on February 28, 1967, executed and delivered a new note for the unpaid balance. This note was secured by furniture of plaintiffs, as described in a security agreement signed by them. The court further found that plaintiffs understood the transaction *475 and that no violations of the New Mexico Small Loan Act of 1953 (§§ 48-17-30 to 48-17-58, N.M.S.A. 1953) were shown. Plaintiffs sought to have the court declare the property covered by the security instrument as exempt under §§ 24-5-1 and 24-6-7, N.M.S.A. 1953. From the court's action in denying such a declaration this appeal is taken.
Section 24-5-1, N.M.S.A. 1953, sets forth the property that may be held exempt by a head of family or a widow "from execution, attachment or sale, for any debt * *." Section 24-6-7, N.M.S.A. 1953, specifies what may be held "exempt from levy and sale" by the head of a family who does not own a homestead. Each of these sections exempts certain property from its operations, but makes no mention of property mortgaged or included in a security agreement.
It is plaintiffs' position that the exemptions granted by law cannot be waived. Although this court has never directly passed upon the question as applied to chattel mortgages or security instruments, in Tomson v. Lerner, 37 N.M. 546, 25 P.2d 209, 96 A.L.R. 246 (1933), we held that a person who rented premises from another thereby waived both his property exemption under § 24-5-1, supra, and his exemption in lieu of homestead (§ 24-6-7, supra). We quote from that case (37 N.M. at 549, 25 P.2d at 210):
"* * * The exemption statute was adopted as a humane policy to prevent families from becoming destitute as the result of misfortune through common debts which generally are unforeseen, but leaves to the individual the right to waive his exemption either by mortgage or operation of law, and when a person moves upon the premises of another, he is aware, not only of the law which gives the landlord a lien upon the chattels which he brings into the place, but of the established policy in this state, and thereby concedes to the landlord the right to hold such chattels for rent due until paid or secured, and thereby waives his exemption as effectively as if he had given to the landlord a conventional chattel mortgage on such property to secure the landlord in his rent."
As noted, although a chattel mortgage was not involved in Tomson v. Lerner, supra, a waiver of statutory exemptions on property mortgaged was therein recognized. Plaintiffs, while claiming there are states holding otherwise (See Annot., 94 A.L.R.2d 968, 969), do not argue that the statement quoted above does not accord with the general rule. See 31 Am.Jur.2d 459, Exemptions, § 158. It is their position, however, that because of policy considerations not deemed controlling where a chattel mortgage is executed, a security agreement given under the Uniform Commercial Code  Secured Transactions (§ 50A-9-101 to § 50A-9-507, N.M.S.A. 1953) should be construed as not including an implied waiver of statutory exemptions.
They offer this distinction: a chattel mortgage, it is said, passes an estate in property covered by the mortgage whereas a security interest only creates a contract right conditioned upon the debtor's failure to perform under the loan agreement. Thus, the plaintiffs would liken a security interest to an indemnity agreement or an executory contract to waive exemption rights in the future and would then have us follow a line of cases declaring waivers in such circumstances void as against the policy of statutory exemptions. See Iowa Mutual Ins. Co. v. Parr, 189 Kan. 475, 370 P.2d 400, 94 A.L.R.2d 960 (1962); Annot., 94 A.L.R.2d 968, 969.
Assuming, without deciding, that the law of this state does not favor waivers intended to operate at a future time, we are not convinced that a security agreement is such a waiver or that, in practical effect, a security interest differs from a chattel mortgage in any way pertinent to the case at bar.
A security agreement "means an agreement which creates or provides for a security interest." § 50A-9-105(h), N.M.S.A. 1953. A security interest is an *476 "interest in personal property." § 50A-1-201(37), N.M.S.A. 1953. Therefore it appears to us that the effect of a security agreement is to immediately transfer a property interest in the collateral. The waiver is present, not future, regardless of whether the interest transferred be deemed "title," "lien," or something else. See also, § 50A-9-202, N.M.S.A. 1953.
We recognize that the exemption statutes are designed to protect debtors from becoming destitute as a consequence of unforeseeable indebtedness. Tomson v. Lerner, supra. But it has never been suggested that such statutes be construed to deprive an individual of his rights of ownership in the exempt property. Often, such property is the poor man's only source of cash in an emergency and, if the law permits him to sell his exempt property, surely it permits the less drastic step of encumbering it.
Plaintiffs also argue that the security agreement was unconscionable and, hence, unenforceable. They cite us to § 50A-2-302, N.M.S.A. 1953, which provides that if a court finds, as a matter of law, that a contract was unconscionable at the time it was made, it may refuse to enforce it. They fail to note that the section is part of the Uniform Commercial Code applicable to sales, and by its terms does not apply to security transactions. See § 50A-2-102, N.M.S.A. 1953; 19 Maine L. Rev. 81 (1967); 45 Va.L.Rev. 583, 590 (1959).
Any question of violation of the Uniform Commercial Code aside, it is asserted that the contract was unconscionable because plaintiffs were of Spanish descent, had no education in English, had lived in this country only seven years, and had not had the agreement explained to them in Spanish. Further, it is claimed that violations of the Small Loan Law were present in that no receipts, showing allocation of each payment to principal and interest and the unpaid balance, as required by § 48-17-44(a) (2), N.M.S.A. 1953, were delivered to plaintiffs, and that the intent of § 48-17-49(a), supra, was violated because Mrs. Hernandez did not understand the terms of the security agreement when she signed it. In addition, plaintiffs argue that the consideration for the security agreement was unconscionably inadequate.
Without undertaking to determine the effect of failure to issue receipts complying with the statute, we are satisfied that no holding that the agreement was unenforceable is thereby demanded. Neither do we think that § 48-17-49(a), supra, has any application. Mrs. Hernandez' signature was on the agreement and the trial court found that both plaintiffs understood English. There is ample evidence to support this finding. In addition, we cannot say that as a matter of law the transaction was so grossly unfair that it should have been denied enforcement under the common law. Compare Scott v. United States, 79 U.S. (12 Wall.) 443, 445, 20 L.Ed. 438 (1870). See Williams v. Walker-Thomas Furniture Co., 121 U.S.App.D.C. 315, 350 F.2d 445 (1965); Weeks v. Pratt, 43 F.2d 53 (5th Cir.1930); Dysarz v. Janczarek, 238 Mich. 529, 213 N.W. 694 (1927); Sova v. First Nat. Bank of Ferndale, 18 Wash.2d 88, 138 P.2d 181 (1943); Indianapolis Morris Plan Corporation v. Sparks, 132 Ind. App. 145, 172 N.E.2d 899 (1961); see, also, 1 Corbin on Contracts, § 128 (1963).
Finding no error, the judgment of the trial court should be affirmed. It is so ordered.
COMPTON and CARMODY, JJ., concur.