823 P.2d 929

**Shirley D'AVIGNON, Plaintiff–Appellant,**

v.

**James O. GRAHAM, Defendant–Appellee.**

No. 12062.

Court of Appeals of New Mexico.

Nov. 7, 1991.

Winston Roberts–Hohl, Santa Fe, Marvin Baggett, Farmington, for plaintiff-appellant.

Randall S. Roberts, Roberts & Jolley, Farmington, for defendant-appellee.

OPINION

ALARID, Chief Judge.

Plaintiff (mother) appeals a trial court judgment that her lien on defendant's (father) real and personal property arising out of child support arrearages pursuant to NMSA 1978, Section 40–4–15 (Repl.Pamp. 1989) cannot be foreclosed because father timely interposed an exemption defense pursuant to NMSA 1978, Sections 42–10–1 or –2 (Orig.Pamp.). We reverse.

FACTS

This case was tried by non-jury trial. The parties have agreed to the following stipulated facts on appeal: Defendant is the unemployed father of a minor child. Following a divorce between father and the mother of the child, the parties entered into a child support agreement. Pursuant to this agreement, father is indebted to mother for child support arrearages in the amount of $2,625.

Father owns a pickup truck with a fair market value of less than $4,000 and an attached camper shell valued at less than $300. Father owns no other personal property and does not own a homestead. Pursuant to Section 40–4–15, mother obtained a perfected statutory lien on the real and personal property of father for the amount of the child support arrearages. Mother attempted to foreclose the lien on father's pickup truck and camper. Father timely interposed a statutory exemption defense. The trial court, relying on Sections 42–10–1

or –2 (exemptions), found the lien valid, but unenforceable against the truck and camper shell as a matter of law.

## DISCUSSION

█ Today there exists in our statutory child support enforcement scheme an ambiguity which apparently makes possible the interposition of an exemption defense between a parent and a minor child's claim for child support. The sole question on appeal is whether a statutory lien based on child support arrearages may defeat a statutory exemption defense. For the reasons set forth below, we conclude that the statutory exemption defenses set forth at NMSA 1978, Chapter 42, article 10, are unavailable to a parent as against a lien for child support obligations under Section 40–4–15.

### I. Issues Properly Preserved for Appeal

Father has taken the position that the issue of whether an exemption defense may defeat a lien based on child support arrearages was not properly preserved for appeal. Father complains that mother failed to submit, and the trial court failed to enter, findings of fact which support the required predicate that father was not supporting his child.

Whether or not a parent is "supporting another person" within the contours of the exemption statute is a question of fact. *See Ruybalid v. Segura,* 107 N.M. 660, 666, 763 P.2d 369, 375 (Ct.App.1988). In *Ruybalid,* this court indicated that the question turns on the extent of financial contribution made by the parent. *Id.* at 666, 763 P.2d at 375. In this case, the trial court's findings establish father owes mother $2,625 in child support arrearages. The record also establishes that father admitted in his answer to mother's complaint that he was so indebted. The record contains no evidence that father is supporting his minor child. We conclude the trial court findings are sufficient and establish that the issue was properly preserved below.

### II. The Relevant Statutes

The trial court held that mother had a valid lien pursuant to Section 40–4–15. Section 40–4–15 provides that a money allowance to children constitutes a lien on the real and personal property of the party so obligated.

In case a sum of money is allowed to the children by the decree for the support, education or maintenance of the children, *the decree shall become a lien on the real and personal property* of the party who must furnish the child support from the date of filing for record a certified copy of the decree in the office of the county clerk of each county where any of the property may be situated. [Emphasis added.]

*Id.; see also Gonzalez v. Gonzalez,* 103 N.M. 157, 161, 703 P.2d 934, 938 (Ct.App. 1985) (child support payments become vested final judgments at time due and not paid in full). However, because the foreclosure of judgment liens by judgment creditors is apparently subject to article 10 (§§ 42–10–1 to –11) statutory exemptions, and nothing in article 10 expressly excepts liens based on child support obligations from being defeated by an exemption defense, the trial court held the lien unenforceable. *See* NMSA 1978, § 42–10–11 (Orig.Pamp.) (statutory exceptions to homestead exemption defense).

The trial court relied in part on NMSA 1978, Section 40–4–16 (Repl.Pamp.1989), which provides:

The liens created by this act [§§ 40–4–12 to 40–4–19 NMSA 1978] may be satisfied by execution or *may be foreclosed under the same procedure* as is now allowed for the foreclosure of judgment liens. [Emphasis added.]

At the trial, the trial court sought but did not receive adequate authority to derive the true legislative intent in this area of law. Where a defendant debtor has no wages to garnish, to construe the above provisions as father urges produces the draconian result of statutory child support obligations that are unenforceable. Moreover, it is inconsistent with the strong public policy requiring that our child support

statutes be construed to ensure the welfare of minor children. *See Spingola v. Spingola,* 91 N.M. 737, 743, 580 P.2d 958, 964 (1978) (welfare of child is primary concern on review of child support awards and support order modifications). We do not believe that the legislature intended both to create statutory liens and render them unenforceable as a matter of law. We conclude that father's reading of Section 40–4–16 is incorrect. We address below the proper construction of the statutory provisions in issue.

## III. Statutory Construction Concerns

Father argues that the rules of statutory construction preclude a holding that the article 10 exemptions contain an implied exception for liens based on child support obligations. Father relies primarily on the "plain meaning" rule. *See General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 703 P.2d 169 (1985) (plain language of statute is primary means of ascertaining legislative intent). Specifically, father argues that the terms used in the exemption statutes "clearly indicate that public policy does not favor payment of child support which overrides the public policy favoring minimum exemptions from execution or judgment liens." We disagree. The enactment of the article 10 exemptions by the New Mexico legislature does not positively require that the exemption be effective against minor children seeking to foreclose liens based on child support arrearages.

Father overlooks that the cardinal rule of statutory construction is to determine legislative intent. *See Quintana v. New Mexico Dep't of Corrections,* 100 N.M. 224, 668 P.2d 1101 (1983) (purpose of rules of statutory construction is to determine legislative intent). True, legislative intent is first sought by reference to the plain meaning found in the language used by the legislature. However, both this court and the New Mexico Supreme Court have rejected formalistic and mechanistic interpretation of statutory language. *See Martinez v. Research Park, Inc.,* 75 N.M. 672, 410 P.2d 200 (1965) (intention of legislature prevails over strict adherence to letter of statute), *overruled on other grounds, Sundance*

*Mechanical & Utility Corp. v. Atlas,* 109 N.M. 683, 789 P.2d 1250 (1990); *Lakeview Investments, Inc. v. Alamogordo Lake Village, Inc.,* 86 N.M. 151, 520 P.2d 1096 (1974); *Security Escrow Corp. v. State Taxation & Revenue Dep't,* 107 N.M. 540, 760 P.2d 1306 (Ct.App.1988) (central concern of reviewing court is to determine legislative intent). Judge Learned Hand, in his concurring opinion in *Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir.1944), has said:

> There is no surer way to misread any document than to read it literally; in every interpretation we must pass between Scylla and Charybdis; and I certainly do not wish to add to the barrels of ink that have been spent in logging the route. As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation; and, although their words are by far the most decisive evidence of what they would have done, they are by no means final.

Our courts have said of the exemption statute in issue today:

> In a comprehensive statute such as this, harmony and consistency, while greatly to be desired, are not always found. A momentary lapse from them may easily be given too much weight in interpretation.

*McFadden v. Murray,* 32 N.M. 361, 367, 257 P. 999, 1002 (1927); *see also* 35 C.J.S. *Exemptions* § 4 (1960) ("the intention of the lawmaker must prevail over the literal sense of the terms, and the spirit and intention of the statute must prevail over its strict letter").

We review the history and application of our exemption statute to ascertain the proper construction of the language in issue.

## IV. Exemption Laws: History, Application and Proper Construction

▮ Exemption laws rest entirely on constitutional or statutory grounds. *See* 31 Am.Jur.2d *Exemptions* § 1 (1989); *see also* 35 C.J.S. *Exemptions* § 1 (1960); *New*

*Mexico Nat'l Bank v. Brooks*, 9 N.M. 113, 49 P. 947 (1897) (exemption is personal right and is purely statutory). Exemptions were unknown at common law, and are in derogation thereof. *See* 31 Am.Jur.2d *Exemptions* § 2 n. 13; 35 C.J.S. *Exemptions* § 1 nn. 10 & 11; Exemptions are privileges granted by law on public policy grounds. *See* 31 Am.Jur.2d *Exemptions* § 1; 35 C.J.S. *Exemptions* § 3. "The purpose of a homestead exemption, and of exemptions in general, is to benefit the debtor and the debtor's dependents. [Citation omitted.]" *Ruybalid v. Segura*, 107 N.M. at 666, 763 P.2d at 375; *see also In re Spitz Bros.*, 8 N.M. 622, 45 P. 1122 (1896) (exemptions protect debtor's necessities and guard against familial destitution); *Schlaefer v. Schlaefer*, 112 F.2d 177 (D.C.Cir.1940) (it is not the purpose of exemption laws to relieve the debtor of family obligations); *In re Niemyjski*, 26 B.R. 466 (Bkrtcy.D.N.M. 1983); *In re Welch*, 8 F.Supp. 838 (D.N.D. 1934) (purpose of exemption statutes is to provide for care of dependents); *Davis v. Davis*, 246 Iowa 262, 67 N.W.2d 566 (1954); *Mahone v. Mahone*, 213 Kan. 346, 517 P.2d 131 (1973); *Pope v. Pope*, 283 Md. 531, 390 A.2d 1128 (1978); *Meadows v. Meadows*, 619 P.2d 598 (Okl.1980). The exemption is an affirmative defense which may be relied upon only as a matter of privilege; it is not a vested right and the right to assert it may be waived. *See* 31 Am.Jur.2d *Exemptions* § 1; *Speckner v. Riebold*, 86 N.M. 275, 523 P.2d 10 (1974); *but see USLife Title Ins. Co. of Dallas v. Romero*, 98 N.M. 699, 652 P.2d 249 (Ct.App.1982) (1979 legislative amendment relieves defendant of obligation to assert exemption defense in original answer). Moreover, a debtor may be estopped from asserting an exemption defense. *See* 31 Am.Jur.2d *Exemptions* § 1; *Bagalini v. Arizona Dep't of Economic Sec.*, 135 Ariz. 326, 660 P.2d 1253 (Ct.App.1983) (statutes exempting property from legal process intended to benefit wife and children as much as debtor); *but see County of Nicollet ex rel. Block v. Havron*, 357 N.W.2d 134 (Minn.Ct.App.1984) (court authority to order sale of property to satisfy child support arrearages is limited by statutory homestead and personal property exemption).

## V. New Mexico Exemption Statute

New Mexico's first exemptions were promulgated by the legislature in 1887. *See* 1887 N.M.Laws, ch. 37. The terms of the statute have evolved, sometimes in response to judicial constructions of the statute and sometimes in response to the changes in society at large. Despite the amendments, no alternation of the underlying policy can be derived therefrom. *See Hewatt v. Clark*, 44 N.M. 453, 103 P.2d 646 (1940) (rejecting contention that legislative amendment indicates alteration of underlying policy of statute).

With the exception of situations involving garnishment, New Mexico's exemptions have been construed consistently since 1897. *See Hewatt v. Clark* (construing exemption statute after legislative amendment addressed *McFadden* and *Dowling-Moody* judicial constructions); *Dowling-Moody Co. v. Hyatt*, 39 N.M. 401, 48 P.2d 776 (1935) (garnishment not a device to reach exempt property); *McFadden v. Murray* (garnishment and exemptions). Additionally, New Mexico's treatment has been consistent with the general trend in interpretation demonstrated by the majority of jurisdictions. *See generally* 35 C.J.S. *Exemptions;* 31 Am.Jur.2d *Exemptions.*

In *In re Spitz Bros.*, our supreme court declined to allow partners in a bankrupt partnership to claim personal exemptions in the nature of those available to the heads of households where the debts sued upon were debts of the partnership. The court said:

> The language of the act should be construed in harmony with its humane and remedial purpose * * * * The interest it assumes to protect is that belonging to the debtor, be it more or less, whatever it be within the limitations of the statute the debtor's interest is exempt, in view of his own necessity and of the probable destitution to which its loss might reduce the family depending on him for support.

*Id.,* 8 N.M. at 628, 45 P. at 1123. This language indicates that from the very out-

set of our judicial construction of our exemption laws, the underlying policy rather than the letter of the statute has guided its interpretation. Moreover, the rule of liberal construction, in favor of the "poor debtor," is not applied where it would work to defeat a cardinal purpose of the statute: to protect the innocent dependents from the consequences of poor fiscal choices by the primary fiscal decisionmaker.

In *New Mexico Nat'l Bank v. Brooks*, a bank sought to recover on a debt owed by an employee of the Santa Fe Railroad. Unable to collect, it instituted garnishment proceedings against the railroad and it was determined that the railroad owed the employee two months of salary. Defendant employee moved to exempt his wages as necessary for the support of himself and his family. The trial court allowed collection from the railroad but placed the funds in the court registry and allowed the defendant employee to interpose his claim of exemption. The court thereon granted the exemption.

In choosing to reverse the trial court on the issue of whether the owed wages for which exemption was claimed should stand, our supreme court noted that whether or not the funds were truly in the nature of money necessary to support the defendant employee's family was dispositive.

> The legislature, in conformity with public policy now generally prevalent, enacted the exempting statute *to encourage the formation of the family relation* by conferring upon the heads of household privileges to protect their families against want in the event of misfortune[.] * * * The statute exempts the personal earnings of the debtor entitled to its benefits to the amount necessary *for the support of his family,* and courts in administering the law should take into due consideration the facts and circumstances of each case. [Emphasis added.]

*Id.,* 9 N.M. at 128–29, 49 P. at 952.

*Tomson v. Lerner,* 37 N.M. 546, 25 P.2d 209 (1933), is nearly on all fours with today's case. In *Lerner,* the appellee, a woman heading a household, leased a store from appellant and fell behind in her rent.

Appellant obtained a statutory landlord's lien on merchandise and goods in the store. Appellee interposed her claim of exemption, arguing a landlord's lien cannot attach to exempt property and that there was no exception to the exemption statute permitting landlord's liens to attach. The trial court permitted the exemption and the appeal followed. The supreme court, relying on statutory construction and equity grounds, reversed.

In *Lerner,* a statute granted a lien on all the personal property in the rented house for the rent due. An existing exemption statute provided an exemption, in lieu of a homestead, from levy and sale, real or personal property in the amount of $500. Another statute provided that an owner of real estate could, by mortgage or other act, waive an otherwise available exemption. The court said:

> It is apparent that the Legislature favored liens as against exemptions in the very law granting exemptions. The landlord's lien originates because of the relationship resulting from landlord and tenant. When the tenant moves into the premises of his landlord, by *his own act* he creates the lien in favor of the landlord, and thereby waives his exemption as effectively as though he had granted a mortgage.
>
> It is the appellee's theory that the statute fails to except landlord's liens from the operation of the exemption statute, as it does mortgages, mechanic's liens, etc.
>
> It is not necessary to except landlord's lien from the operation of the statute. The lien has always been deemed superior to the exemption, and it was not necessary to specifically provide that exemptions could not be claimed as against a lien for rent, other than as a matter of extra precaution. [Emphasis added.]

*Id.* at 547–48, 25 P.2d at 210. The court also noted:

> The exemption statute was adopted as a humane policy to prevent families from becoming destitute as the result of misfortune through common debts which generally are unforeseen, but leaves to

the individual the right to waive his exemption either by mortgage or operation of law * * *.

This is not a weighing of equities, nor of determining priorities of liens. The rights of both landlord and tenant are founded in law, *and it was never the intention of the Legislature to permit a claim of exemption to defeat a statutory lien[.]* [Emphasis added.] *Id.* at 549, 25 P.2d at 210–11. The *Lerner* holding is twofold. First, the court noted the landlord lien was an older legislative enactment than the exemption enactment and reasoned the policy of our legislature was to preclude the interposition of an exemption defense to defeat a statutory lien, where to do so would permit the abrogation of a duty well-settled as a matter of statutory law. The implicit judicial policy is that statutory liens are not to be defeated by policy-based exemption defenses unless the legislative intent to permit such exemptions is overwhelmingly clear. Because the tenant knew or should have known of the well-settled law granting landlords liens on the chattel property within the rented premises, the court found that acting in open derogation of a rent obligation operated as a waiver of the exemption privilege as to the property located therein. Second, where the *conduct* of the party attempting to assert the exemption defense is of a certain character as a matter of law, that party may be estopped from interposing the exemption.

In the case before us, we need not decide whether father's actions constitute waiver or the conditions of estoppel.[1] Under either analysis, the exemption defense is unavailable.

As noted above, the divorce decree awarding child support created an immediate lien on all the personal and real property of father. *See* § 40–4–15. Construing the statute consistent with *Lerner* sug-

gests that father in this case be estopped from asserting the exemption defense because of the well settled, common law duty of support for his minor child. *See In re Quintana*, 83 N.M. 772, 774, 497 P.2d 1404, 1406 (1972) (as a matter of law, it is unquestionable that both male and female parents owe minor child a duty of support); *Wilson v. Wilson*, 45 N.M. 224, 114 P.2d 737 (1941) (support duty of father is to exhaust every reasonable resource prior to judicial relief therefrom); *Fullen v. Fullen*, 21 N.M. 212, 237, 153 P. 294, 302 (1915) (duty to support minor children arises from common law). This duty existed long prior to the enactment date of the exemption statute. *See* 1 W. Blackstone, *Commentaries on the Laws of England* 436 (1979) Chicago (duty of support and maintenance is a principle of natural law). This court is aware of no legislature, either within New Mexico or without, that has ever specifically abrogated this duty. On the contrary, our statutes encourage respect for, and enhance opportunities for, successful discharge of this solemn duty. *See generally*, NMSA 1978, Chap. 40 (1989 Repl.Pamp.). Moreover, this duty has been consistently reaffirmed by our courts. *Niemyjski v. Niemyjski*, 98 N.M. 176, 177, 646 P.2d 1240, 1241 (1982) (emphasizing that most important single obligation of a parent is the support of a minor child); *Spingola v. Spingola*, 91 N.M. at 743, 580 P.2d at 958 (paramount issue in child support matters is welfare of the child).

This court does not believe the legislature ever intended to undermine the strong public policy underlying the support duty present in our statutes and our cases by permitting the creation of liens for child support that cannot be foreclosed. The privilege of the exemption must defer to the unavoidable duty arising out of the common law. If the legislature wishes to modify this long standing policy, it must do so with specific language evidencing clear

---

1. In this case, the principle of estoppel would bar father from interposing his defense. The discussion above demonstrates that the exemption defense is a defense designed to protect *both* the debtor and his dependents. Taking the position that the property in question is immunized from foreclosure, and necessary for his minimum needs, precludes the defendant debtor from taking the legal position that the property is exempt from foreclosure for child support obligations. To rule otherwise would turn the very statute designed to protect the dependents into the mechanism whereby they are cast into even further pecuniary strangulation.

legislative intent. Absent such intent, this court will never hesitate to cast its mantle of charity around the shoulders of children near to whom avoidable suffering lurks. A defendant in a suit seeking to foreclose on a lien created by Section 40–4–15 is estopped as a matter of law from relying on a statutory exemption defense.

In *Laughlin v. Lumbert*, 68 N.M. 351, 354, 362 P.2d 507, 509–10 (1961), the supreme court noted:

> The conclusion we have reached is in accord with the purposes of the exemption statute which is to "prevent families from becoming destitute as the result of misfortune through common *debts which generally are unforeseen* * * * "" [Emphasis added.] (citations omitted).

This judicial statement of legislative intent is consistent with the analysis under *Lerner* and provides additional support for our ruling today. Unlike a business or consumer debt, the cost of raising children cannot fairly be said to be a debt which is unforeseen. It would be inappropriate to conclude that unforeseen debt and debt for support of a minor child are debts of the same character. *See In re Weaver*, 98 B.R. 497, 501 (Bkrtcy.D.Neb.1988) ("Dependents are not 'creditors' within the meaning of the statute."); *Bagalini v. Arizona* (wife and children not creditors in ordinary sense); *State v. Reed*, 5 Conn.Cir.Ct. 69, 241 A.2d 875 (1967) (welfare commissioner having provided necessary funds to sustain family is not normal creditor and is not barred by exemption statute in suit to recover from delinquent father); *see also Steller v. Steller*, 97 N.J.Super. 493, 235 A.2d 476 (App.Div.1967) (exemption clause designed to protect funds from claims by third parties with interests hostile to both debtor and his dependents).

*Hernandez v. S.I.C. Finance Co.*, 79 N.M. 673, 448 P.2d 474 (1968), involved the issue of whether property covered by a security agreement could be exempt. The trial court held that the security agreement

controlled. Our supreme court upheld this ruling.

Citing *Lerner*, *Hernandez* rejected defendant debtor's argument that an exemption could not be impliedly waived. *Id.* at 674, 448 P.2d at 475. The court found that *Lerner* stood for the principle that waivers may be created by the action or conduct of the party seeking to interpose the exemption defense. It also noted that such waiver by action is the rule in the majority of jurisdictions. Defendant argued that no agreement under the Uniform Commercial Code could be construed as an implied waiver of an exemption. *Id.* The court reasoned a security agreement constitutes an immediate transfer of a property interest.[2]

> The waiver is present, not future, regardless of whether the interest transferred be deemed "title," "lien," or something else. *See also* § 50A–9–202, N.M.S.A. 1953.
>
> We recognize that the exemption statutes are designed to protect debtors from becoming destitute as a consequence of *unforeseeable indebtedness*. *Tomson v. Lerner*, supra. [Emphasis added.]

*Id.* at 675, 448 P.2d at 476. *Hernandez* holds that a security interest, when considering exemption defenses, transfers the interest immediately and operates to waive any exemption which might later be asserted. In the case before us, a lien on all father's property was created by operation of law after the decree was properly filed with the county clerk in the county in which the property was situated. *See* § 40–4–15. Tracking the logic of both *Lerner* and *Hernandez*, the interest in the property father now seeks to exempt from foreclosure is not his interest, it is his child's interest held by and through his former wife.

We also briefly note that while Section 40–4–16 provides the lien is *procedurally* enforced like any other judgment creditor lien, it does not equate the two types of

---

**2.** The New Mexico Legislature affirmed this construction with the passage of Section 42–10–

6 in 1971. *See* 1971 N.M.Laws, ch. 215, § 3.

creditors. As noted above, cases from other jurisdictions suggest debt arising out of child support obligations is not a consumer or business debt. *See In re Weaver; Steller v. Steller.* Nothing in our exemption statute or its interpretation requires this court find a mother seeking to foreclose a lien based on child support arrearages is cut from the same cloth as a creditor seeking to recover on a business deal gone bad.

We briefly distinguish our recent case of *Ruybalid v. Segura.* In *Ruybalid,* we reversed a trial court ruling because the trial court had not liberally construed the exemption statute, as is our policy. Noting that legislative intent controls our interpretation of the statute, and finding the statute unambiguous as to the issue at bar, we reversed because the trial court *added* elements not found in the plain language of the statute.

*Ruybalid* relied upon a rule of construction typically applied to favor the "poor debtor." However, as the other cases discussed above demonstrate, we cannot rely on the liberal construction rule to favor the poor debtor where it would defeat a well settled and principal purpose underlying the exemption statute as well as a common law duty expressly affirmed by our courts. *See Niemyjski v. Niemyjski* (single most important fiscal obligation is support of minor child). Both the legislative and judicial history of the federal bankruptcy code supports this analysis as well. *See In re Mojica,* 30 B.R. 925, 8 C.B.C.2d 997 (Bkrtcy.E.D.N.Y.1983); Cowans *Bankruptcy Law and Practice* § 6.47 (Interim ed. 1983) ("Rehabilitation of helpless debtors is an important objective but there is no compelling reason why this should be at the expense of the economically helpless members of his, or her family.").

Because protection of dependents is a purpose of our statute, to liberally construe it in favor of father in this case would result in frustration rather than fulfillment of its principal purpose.[3] Where our supreme court has declared the single most important obligation of a person owing child support to be the payment of that support, our exemption statute cannot be construed by this court to defeat that declaration. Moreover, it would defy logic to permit the exemption to be interposed between father and his dependent because not only would the purposes of the lien and the exemption statute be frustrated, but the exemption statute would be the means by which the support obligation could be avoided. Our holding, we believe, is supported by the test for determining true legislative intent as noted by Judge Learned Hand in his concurring opinion in *Guiseppi.* *But see Utley v. Utley,* 355 Mass. 469, 245 N.E.2d 435 (1969) (court unauthorized to create exceptions to exemption statute where precise language precludes interpretation).

Finally, we are persuaded that the conclusion we reach today is correct because the structure of our statutory framework relating to child support matters favors our reading. First, the trial court, with jurisdiction over the decree and therefore the child support amount, exercises wide discretion as to modification. *See Spingola v. Spingola; see also* NMSA 1978, § 40-4-7 (Repl.Pamp.1989). This discretion includes the statutory authority to either reduce the amount of child support obligation or to order a stay of execution of a lien based on child support arrearages. Additionally, under Section 40-4-17, a lien on real estate arising out of 40-4-15 may be lifted for good cause shown. We conclude ample avenues of relief have been provided by the legislature within the article creating the lien.

Moreover, Section 40-4-13 (Repl.Pamp. 1989) (liens for alimony), permits liens to attach only to real property of the debtor. Section 40-4-15 (liens for child support) permits liens to attach to *both* real and

---

**3.** We note that the trial court considered the application of Section 42-10-2 (exemptions of persons who support only themselves) to the facts of this case. Section 42-10-2 is unavailing to father. Where an individual is under a court order to support another person, an exemption defense available to persons supporting only themselves cannot stand. To permit relief under Section 42-10-2 would make a mockery of our child support enforcement scheme because mere refusal to pay would create the predicates for the application of the defense.

personal property. While the trial judge has discretion to remove liens on real property entered to secure either alimony or child support, no such discretion exists as to liens on personal property used to secure child support. *See* Section 40–4–17. The enhanced attachment capability of 40–4–15 for child support obligations, combined with diminished judicial authority to fashion relief from the personal property lien under 40–4–17, suggest that the legislative intent is to preclude relief from child support obligations.

The preferred practice in cases such as this is to first move for modification of the child support amount due pursuant to Section 40–4–7. Second, a defendant debtor might then seek a stay of execution on any real property under 40–4–17. It appears that our legislature intended to foreclose any possibility of avoiding execution on personal property attached by lien for child support debt. The shield of exemption may not be substituted for the above procedures nor used as a sword of retribution against innocent minor children.

## CONCLUSION

Exemption laws were enacted to protect the head of a household and his dependents from the harsh vicissitudes of poor fiscal decision-making. As this case demonstrates, the concept of the "fresh start" for the poor debtor must defer to the needs of innocent minor children unable to provide for themselves. Because the duty to support minor children arises out of the common law, and exemptions are in derogation of the common law and for the purpose of protecting dependents, and Section 40–4–15 creates a lien to secure the minor child's support, this court concludes that father has waived, by operation of law, any right to assert an exemption defense between himself and his child support obligations.

Reversed and remanded.

IT IS SO ORDERED.

APODACA, J., concurs.

HARTZ, J., specially concurs.

HARTZ, Judge (specially concurring).

Although I concur in the result, I cannot join in the majority's opinion. My principal disagreement is with what I perceive to be the majority's approach to statutory interpretation.

Most legislative enactments represent a compromise between competing interests. Not uncommonly judges, just as other citizens, will view one of those competing interests as the more "moral" and the other as the more "self-interested." Support for the moral interest may well be found in other statutes and judicial opinions. Of course, these sources of authority may shed light in interpreting a statutory provision. It is a mistake, however, to focus entirely on support for the moral interest and to ignore the influence on the statute of the less attractive self-interest when one is construing the statute to resolve a dispute between those two interests. If in such disputes the statute is always read to support the moral interest as much as possible, then the court may well be undermining the compromise intended by the legislature that enacted the statute. Our function is to interpret the statute as enacted, not to give the "forces of good" a victory which they were not able to achieve in the legislative arena.

In this case the majority clearly identifies the moral high ground and the reprehensible self-interest. The moral high ground is enforcement of a father's obligation to support his children. The self-interest is the father's desire to maintain some personal possessions. Few people would question the priority of the father's obligation to his children.

Yet there is room for debate on where to draw the line. Is a parent who owes child support nevertheless entitled to maintain some minimum amount of personal property? It is not inconceivable that concern for the father's interest could find expression in legislative enactments. For example, although one who owes child support is not entitled to the ordinary debtor's statutory exemption from wage garnishment of 75% of disposable earnings, one who is delinquent in child-support payments is still enti-

tled to a 50% exemption. NMSA 1978, § 35–12–7. This garnishment statute reflects a compromise between the moral imperative of supporting one's child and the self-interest of the defaulting parent.

Similarly, the legislature may determine that a parent who has defaulted on child support is still entitled to exempt a car of limited value from enforcement of the support obligation. One might distinguish such an exemption from the limitation on garnishment on the ground that the garnishment exemption is necessary to encourage the defaulting parent to seek and maintain employment. Perhaps that consideration was a factor in fixing the limitation on garnishment. Yet a motor vehicle may also be necessary to seek and maintain employment. In this case it appears that father was not employed, so that particular argument for an automobile exemption may not apply to him; but there may also be circumstances in which the 50% exemption from garnishment would not be necessary to encourage a particular defaulting parent to keep a job. The legislature simply may have decided that regardless of whether the exemption enables or encourages the debtor to work, the exemption is fair and justified. I should note that courts in other states—courts that are not ordinarily considered to be benighted—have interpreted state statutes to provide the defaulting parent with a normal exemption of debtors from creditors. *Ogle v. Heim*, 69 Cal.2d 7, 69 Cal.Rptr. 579, 442 P.2d 659 (1968) (en banc) (rejecting argument that the exemption be read in light of its purpose to protect family of the debtor); *Utley v. Utley*, 355 Mass. 469, 245 N.E.2d 435 (1969) (rejecting argument that exemption was not intended to shield one from duty to support wife and children).

In short, the question of statutory interpretation confronting us in this case should not be decided by a simple appeal to the general proposition that parents have a fundamental obligation to support their children.[1] Instead, this court should focus on the specific language of the pertinent statutes and on authority relating to the relative weight to be given the competing interests in this case.

The specific statutory language lends substantial support to mother's view. Both NMSA 1978, Section 42–10–1, entitled "Exemptions of Married Persons or Heads of Households," and Section 42–10–2, entitled "Exemptions of Persons Who Support Only Themselves," exempt personal property in the amount of $500 and one motor vehicle in the amount of $4,000[2] "from receivers or trustees in bankruptcy or other insolvency proceedings, fines, attachment, execution or foreclosure by a judgment creditor."[3] In this case mother foreclosed on a child-support lien created by NMSA 1978, Section 40–4–15 (Repl.Pamp.1989). Strictly speaking, the proceeding was not a "foreclosure by a judgment creditor" and therefore would not come within the exemption statutes.

Father relies on NMSA 1978, Section 40–4–16, which provides that child-support liens "may be foreclosed under the same procedure as is now allowed for the foreclosure of judgment liens." I doubt, however, whether the availability of exemptions is part of the "procedure" for the foreclosure of judgment liens. The availability of an exemption would appear to be a matter of substance, to be distinguished from procedures such as those governing notice of sale. Thus, on their face the relevant statutory provisions do not appear to provide for the exemption sought by father.

Moreover, other authority indicates that the legislature intended to give the child-support lien priority over a parent's claim of exemptions. First, the language of

---

**1.** I should add that this case also should not be decided on the basis of the hyperbolic claim that a contrary construction of the statute would render child-support obligations unenforceable.

**2.** Because essentially the same personal property exemptions are permitted to persons with

dependents and persons without dependents, I find it difficult to read into the exemption statutes a priority of the interests of the dependents over the interest of the debtor.

**3.** The exemption in Section 42–10–2 applies also to executors or administrators in probate.

*Tomson v. Lerner*, 37 N.M. 546, 25 P.2d 209 (1933), suggests that statutory liens in general cannot be defeated by claims of exemption. We can presume that the legislature was familiar with that decision when it reenacted the child-support lien statute in 1947, N.M.Laws 1947, ch. 16, § 4, and that it would have made special provision to recognize exemptions to the lien if that was the legislative intent. *See Quintana v. New Mexico Dep't of Corrections*, 100 N.M. 224, 668 P.2d 1101 (1983) (legislature presumed to know the law).

Second, the law gives the obligation of child support priority over any property interest of the parent at the time of dissolution of the marriage. When a marriage is dissolved and the district court makes a determination regarding the children's need for support, the court may "set apart out of the property of the respective parties, such portion thereof, for the maintenance and education of their minor children, as may seem just and proper." NMSA 1978, § 40–4–7(B)(3). A parent could not claim that property is exempt from being set aside for purposes of child support, because it is impossible to read the list of circumstances in which Sections 42–10–1 and –2 apply (receiverships, foreclosures, etc.) as including an order under Section 40–4–7(B)(3). One can view the statutory scheme as in essence providing the district court with two alternatives for ensuring that the children receive proper support: (1) setting aside at the outset property which could be used to pay all or a portion of the necessary support or (2) relying upon the parents to provide for support out of their income, but securing that obligation with the statutory lien on their assets.[4] When the child-support lien is seen in this light—as an alternative to assigning the property for the benefit of the children in the first place—it would be peculiar to exempt property from the lien when that property could not have been exempted from the assignment.

Finally, I find it significant that even if father could claim an exemption here, mother could eventually overcome that exemption if father continued to fail to pay his child-support obligation. If mother forced father into bankruptcy, all of father's property would be subject to the claim for support obligations. *See* 11 U.S.C. §§ 522(c)(1), 523(a)(5); *Matter of Sullivan*, 83 B.R. 623, 624 (Bkrtcy. S.D.Iowa 1988). To be sure, we cannot assume that the New Mexico legislature will balance the interests of the defaulting parent and the children the same way the Congress does. Still, we should refrain from adopting a construction of New Mexico law which, in the face of federal law, would serve little or no purpose. To permit a claim of exemption to a child-support lien would create a pointless anomaly in the law, because the exempt property could have been reached initially by setting it aside for child support under § 40–4–7(B)(3) or could be reached ultimately under federal bankruptcy law.

Thus, denial of the exemption claimed by father is the construction of New Mexico law that best follows the literal language of our statutes, that best comports with other expressions of legislative intent to give the statutory child-support lien priority over the exemption, and that "fits most logically and comfortably" into the surrounding body of law. *West Va. Univ. Hosps. v. Casey*, —— U.S. ——, 111 S.Ct. 1138, 1148, 113 L.Ed.2d 68 (1991). I therefore concur in the result.

---

**4.** This scheme was perhaps more explicit in the predecessor to the present child-support lien statute, 1941 Comp. § 25–708, which in the same paragraph both (1) permitted the judge to vest title to the parents' property in a trustee for the purpose of maintenance and education of the children and (2) provided that if money was allowed to the children, the obligation would be secured by a lien on all property of the parents.