2002-NMCA-004

38 P.3d 198

**In the Matter of the ESTATE OF Paul E. DELARA, Deceased.**

**Application for Formal Appointment of Personal Representative,**

**and**

**Jonathan Niles Kesterson, a minor, and Sarah Ashley Kesterson, a minor, Represented by their Mother, Margaret Kesterson, Plaintiff–Appellant,**

**v.**

**Rosemary M. DELARA, Personal Representative of the Estate of Paul E. DeLara, Deceased, Defendant–Appellee.**

**No. 21,592.**

Court of Appeals of New Mexico.

Nov. 30, 2001.

Certiorari Denied, No. 27,278, Jan. 8, 2002.

Kim E. Kaufman, Albuquerque, NM, for Appellant.

Alan R. Rackstraw, Placitas, NM, for Appellee.

## OPINION

BOSSON, Chief Judge.

{1} In this appeal we determine whether the Uniform Parentage Act (UPA), NMSA 1978, §§ 40–11–1 to –23 (1986, as amended through 2001), allows children born outside of marriage to obtain past and future child support from their father's estate. The district court ruled against that claim because no action for paternity or child support had been filed before their father's death. We reverse. We hold that the UPA authorizes children born outside of marriage to file suit against their father's estate for child support.

## BACKGROUND

{2} Paul DeLara died intestate on January 30, 1999. At the time of his death, Mr. DeLara and his wife, Rosemary DeLara, had been married for thirty-six years, and had two children. Sometime during the marriage, Mr. DeLara had two other children, Jonathan and Sarah, with another woman, Margaret Kesterson. During his lifetime, Mr. DeLara apparently provided some sup-

port to Jonathan and Sarah and maintained a relationship with them.

{3} In April 1999, three months after Mr. DeLara's death, Ms. Kesterson filed a petition to establish parentage under the UPA, seeking to establish that Mr. DeLara was the father of Jonathan, born January 10, 1986, and Sarah, born August 3, 1989. Ms. Kesterson's petition was filed within the statute of limitations established in the UPA, which required her to file suit within three years of her children reaching their age of majority. Section 40–11–23(A). The petition named Ms. DeLara as Defendant acting in her capacity as personal representative of Mr. DeLara's estate.

{4} Ms. Kesterson's petition also sought an award of past and future child support and discovery pertaining to Mr. DeLara's assets. In the course of the proceedings, paternity testing established that Mr. DeLara was the father. The district court entered an order establishing paternity, but deferred ruling on Ms. Kesterson's other claims. The order establishing paternity was not appealed.

{5} Ms. DeLara filed a motion to dismiss that portion of Ms. Kesterson's petition regarding child support. She raised several arguments: (1) that the children could not receive child support if no court order requiring child support had been entered before the father died, (2) that Ms. Kesterson's claim was barred by laches and waiver, and (3) that all community property owned by Mr. DeLara and Ms. DeLara at the time of death passed directly to Ms. DeLara by operation of law which left no community assets from which to pay child support for Jonathan and Sarah.

{6} The district court ruled that, after paternity was established, the children had received all of the relief to which they were entitled under the UPA. The court authorized the children to share in Mr. DeLara's separate property under the laws of intestate succession. However, the court ruled that the children had no claim for child support against Mr. DeLara's estate because they had not filed such an action before his death. Any such claim on behalf of the children was described as "not supported by statute or case law and ... in derogation of the com-

mon law." The district court then dismissed Ms. Kesterson's petition with prejudice.

## DISCUSSION

{7} This case presents a matter of statutory construction which is a question of law reviewed de novo. *Bajart v. Univ. of N.M.*, 1999–NMCA–064, ¶ 7, 127 N.M. 311, 980 P.2d 94.

### Ms. Kesterson's Right to Child Support Under the UPA

{8} The UPA deals with establishing paternity. Sections 40–11–4, –7, –10, –11. It provides for recovering child support and other costs from the father. Section 40–11–15(C) to (F). The UPA also allows suits against the father's estate. Section 40–11–8(C) provides: "The action may be brought in the county in which any party resides or is found or, *if the father is deceased, in which proceedings for probate of his estate have been* or could be commenced." (Emphasis added.)

{9} Thus, Section 40–11–8(C) clearly envisions a suit under the UPA after the death of the father. It does not express whether, as a condition precedent to a suit against the father's estate, an action to establish paternity and obtain child support must have been filed prior to the father's death. Consequently, in interpreting the UPA we must determine legislative intent, reading the statute as a whole and considering its purposes. *D'Avignon v. Graham*, 113 N.M. 129, 131, 823 P.2d 929, 931 (Ct.App.1991) (holding the cardinal rule of statutory construction is to determine legislative intent); *City of Las Cruces v. Davis*, 87 N.M. 425, 426, 535 P.2d 68, 69 (Ct.App.1975) (recognizing parts of an act must be considered as a whole); *Mutz v. Mun. Boundary Comm'n*, 101 N.M. 694, 698, 688 P.2d 12, 16 (1984) ("We interpret statutes in order to facilitate their operation and the achievement of their goals.").

{10} This Court has previously stated that "[t]he primary purpose of a paternity proceeding is to compel the father to support his child." *State ex rel. Human Servs. Dep't v. Aguirre*, 110 N.M. 528, 531, 797 P.2d 317, 320 (Ct.App.1990); *see also Aldridge v. Mims*, 118 N.M. 661, 665, 884

P.2d 817, 821 (Ct.App.1994). Our Supreme Court has characterized child support as a parent's "most important single obligation." *Niemyjski v. Niemyjski*, 98 N.M. 176, 177, 646 P.2d 1240, 1241 (1982) (emphasis omitted). Children born outside of marriage are entitled to support from their parents, just as children who are born to married parents. *Tedford v. Gregory*, 1998–NMCA–067, ¶ 24, 125 N.M. 206, 959 P.2d 540. The state also has an interest in children being supported by their father. *Aguirre*, 110 N.M. at 531, 797 P.2d at 320 (by establishing paternity the state ensures that the child is financially cared for by the father and that "such responsibility does not needlessly fall on the state"). Our law reflects a strong public policy in favor of support. *Wallis v. Smith*, 2001–NMCA–017, ¶¶ 9–11, 130 N.M. 214, 22 P.3d 682 (holding that a father could not rely on a theory of contraceptive fraud to avoid his child support obligation); *D'Avignon*, 113 N.M. at 130–37, 823 P.2d at 930–37 (holding that father could not use personal exemptions to defeat a claim for back child support). We interpret the UPA against this backdrop.

{11} Although the UPA is silent as to whether a support order must have been entered before the father's death, Ms. De-Lara argues that this condition is implicit in existing New Mexico case law. She relies primarily on two cases in which the children were allowed to make claims against their father's estate based on prior child support orders that had been entered while the fathers were still alive. *See Hill v. Matthews*, 76 N.M. 474, 476, 416 P.2d 144, 145 (1966); *D'Avignon*, 113 N.M. at 130–37, 823 P.2d at 930–37. Ms. DeLara cites these opinions for the proposition that, without a prior legal action or support order, no claim against the estate is allowed under the UPA.

{12} We do not find either of these two opinions persuasive for the proposition asserted. While it is true in both cases that prior support orders were enforced against the father's estate or the father's property, it is also true that neither case addresses the statutory language of the UPA or the precise issue under consideration here. *Hill* was decided in 1966, twenty years before the enactment of the UPA. In *D'Avignon*, the child support claim was brought against the father, not the father's estate, and the opinion does not address the UPA at all. *Hill* and *D'Avignon* provide relevant context, but they cannot be expanded to support a proposition never considered by either court. *See Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993) (stating the general rule that cases are not authority for propositions not considered).

{13} The legislature clearly intended the UPA to have broad application. An action may be brought by "[a]ny interested party," §§ 40–11–7 and –21, against an estate, § 40–11–8(C), and under an extraordinary statute of limitations, § 40–11–23 (allowing up to 21 years to bring a UPA action). The importance of child support, both to the child and to the state, cannot be questioned. *Niemyjski*, 98 N.M. at 177, 646 P.2d at 1241; *Aguirre*, 110 N.M. at 531, 797 P.2d at 320. The UPA's only express limitation on a paternity and support action depends on the age of the child, not on the death of the father, nor on whether suit was filed before the father died. *See* § 40–11–23(A). Given the lack of any statutory language in the UPA imposing such a condition, and our strong public policy favoring support, we are not persuaded that the legislature intended to require any such action prior to the father's death as a prerequisite to filing a claim against the father's estate. We will not read into the UPA language that is not there. *See Perez v. Health & Soc. Servs. Dep't*, 91 N.M. 334, 336, 573 P.2d 689, 691 (Ct.App.1977) ("We will not read into a statute language that is not there if [the statute] makes sense as written.").

{14} Ms. DeLara's additional arguments are equally unpersuasive. She argues that NMSA 1978, Section 40–4A–2(H), (L) (1997) of the Child Support Enforcement Act, NMSA 1978, §§ 40–4A–1 to –19 (1985, as amended through 1997), preclude an action against the estate because an "obligor" is defined therein as a "person," which does not include an "estate." Section 40–4A–2(L) (defining "person" as "an individual, corporation, partnership, governmental agency, public office, or other entity"). We reject this argu-

ment. The definition of "obligor" from a statute other than the UPA is not dispositive when the UPA expressly provides for suits against the father's estate. Moreover, we are not persuaded that "other entity," as used in Section 40–4A–2(L), would necessarily exclude an estate.

{15} Finally, relying on *Hill*, Ms. DeLara argues that allowing Ms. Kesterson's children to pursue a claim against Mr. DeLara's estate would place children born outside of marriage in a position superior to children born within marriage. We disagree. The Supreme Court in *Hill* was persuaded that children who were the beneficiaries of a divorce-related child support order should be able to make claims against their father's estate on an equal plane with general creditors of the estate. *Hill*, 76 N.M. at 476, 416 P.2d at 145. If we allow Ms. Kesterson's support action against Mr. DeLara's estate, her children will be in a position, relative to general creditors, comparable to the children in *Hill*. If we were to reject Ms. Kesterson's argument, her children would be in a position inferior to both general creditors of the estate and to other children of the deceased born within marriage. In promulgating the UPA, the legislature intended to place children born outside of marriage on a roughly equal footing with children born within marriage, no better and no worse.

{16} Ms. DeLara also argues that there are "practical obstacles" to allowing this kind of suit, because Mr. DeLara is a "necessary party" and the only one who could testify as to the support arrangements he agreed to and apparently honored during his lifetime. This argument is equally unpersuasive. Mr. DeLara is not the only witness. Ms. Kesterson and perhaps her children can testify to these facts; there may be documentary evidence as well. While Mr. DeLara's death may create evidentiary issues, it is no reason to read language into the UPA that conflicts with legislative intent and overriding public policy.

### Laches and Waiver

{17} Ms. DeLara argued below that Ms. Kesterson's suit was barred by laches and waiver. The district court did not base its ruling on laches or waiver. It ruled instead, as a matter of law, that the children had no claim because they did not file suit before their father's death. We have reversed that decision. On remand, if Ms. DeLara decides to pursue her theories of laches and waiver, the district court may consider any factual issues concerning those theories. However, we note that New Mexico law does not favor laches or waiver in this context. *See Sisneroz v. Polanco*, 1999–NMCA–039, ¶¶ 11–18, 126 N.M. 779, 975 P.2d 392 (waiver); *Bustos v. Bustos*, 2000–NMCA–040, ¶ 18, 128 N.M. 842, 999 P.2d 1074 (laches).

### Mr. DeLara's One-half Community Property Interest

{18} Ms. DeLara argued below that even if Ms. Kesterson could bring her claim under the UPA without first filing suit before Mr. DeLara's death, her claim for child support against the estate could only be satisfied from Mr. DeLara's separate property and not from his undivided one-half interest in the community. Ms. DeLara also argued that certain property passed to her automatically upon her husband's death, and by operation of law is not available to satisfy Ms. Kesterson's claim against the estate. Because the district court ruled against Ms. Kesterson's claim altogether, it had no reason to decide how such a claim could be satisfied. Therefore, these issues as well are best left to the district court on remand.

### CONCLUSION

{19} We reverse the district court's dismissal of Ms. Kesterson's claims against the estate for child support. We remand to the district court for further proceedings.

{20} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, Judge and IRA ROBINSON, Judge.