2003-NMCA-030

62 P.3d 776

**In the Matter of the ESTATE OF Kirsten Janay SUMLER, Deceased.**

No. 22,152.

Court of Appeals of New Mexico.

Dec. 19, 2002.

Dick A. Blenden, Phil Blenden, Blenden Law Firm, Carlsbad, NM, G.L. Spence, Robert P. Schuster, Kent W. Spence, Larissa A. Ferullo, Spence, Moriarity & Schuster, L.L.C., Jackson, WY, for Appellants.

Stuart D. Shanor, Richard E. Olson, Rebecca Nichols Johnson, Hinkle, Hensley, Shanor & Martin, L.L.P., Roswell, NM, Richard E. Griffin, Robert P. Latham, Jackson Walker L.L.P., Dallas, TX, for Appellee.

*OPINION*

ALARID, Judge.

{1} Appellee's motion for rehearing having previously been granted by our Court, and our original opinion filed on September 23, 2002, having been withdrawn by order of the Court, the following opinion is hereby substituted as the opinion of the Court.

{2} Although this case is nominally an appeal from an order appointing Appellee as the personal representative of a deceased child's estate, the actual controversy between the parties is over who should control and profit from the action for the child's wrongful death. We take this opportunity to address two important questions concerning wrongful death actions. First, applying settled law, we hold that the district court's appointment of a surviving parent as the personal representative of the deceased child's estate is

neither necessary nor sufficient authority for the parent to prosecute an action for the wrongful death of a child. Second, addressing a matter of first impression, we hold that under NMSA 1978, § 41-2-3, a surviving parent's right to share in the proceeds of an action for the wrongful death of a child vests at the time of the child's death, and that upon the parent's death the parent's interest in wrongful death proceeds passes to the parent's estate.

## BACKGROUND

{3} Five-year-old Kirsten Janay Sumler (Kirsten) was severely burned by the explosion of a natural gas pipeline. Kirsten died within hours of the explosion. Her mother, Amanda Sumler Smith (Mother), also was severely burned. Mother survived Kirsten's death, but thereafter died from her own injuries.

{4} Appellee, Paul E. Dawson (Father), is Kirsten's natural father. Mother and Father were never married. In 1996, in the course of child support proceedings brought by the Human Services Department, Father was adjudged to be Kirsten's natural parent.

{5} Appellant, Jerry Rackley, is Mother's half-brother. Appellant, Martha Chapman, is Mother's mother-in-law.

{6} Appellants petitioned the district court for an order appointing them as personal representatives of Kirsten's estate. Father objected to Appellants' petition and petitioned the district court for an order appointing him as the sole personal representative. Father asserted, *inter alia,* that

[Father], as the only surviving parent of Kirsten Janay Sumler, a minor child, is the sole statutory beneficiary under the New Mexico Wrongful Death Act, NMSA 1978 § 41-2-3, for any wrongful death action brought on her behalf, and therefore has initiated such an action in the United States District Court for the District of New Mexico. Martha Chapman and Jerry Rackley have no status as statutory beneficiaries ... or entitlement to the proceeds from any such action. Nor would the recovery from such an action be part of the Estate of Kirsten Janay Sumler. Therefore, the Court should not appoint a personal representative of the Estate under NMSA 1978 § 45-3-203 who is not a proper personal representative and statutory beneficiary under NMSA 1978 § 41-2-3, as there are no known assets in Decedent's estate to be administered.

{7} The district court entered a Judgment and Order of Adjudication of Intestacy and Appointment of Personal Representative appointing Father as personal representative of Kirsten's estate. Appellants filed a timely notice of appeal.

## DISCUSSION

### 1. *The Nominal Controversy*

{8} In probate law, "personal representative," refers generally to persons with the duty of settling and distributing a decedent's estate under the supervision of a court, and includes executors and administrators. XVIII Cyclopedia of Law and Procedure, *Executors and Administrators* § I, B, 1 (William Mack, ed.1905). The term "personal representative" is not defined by the Wrongful Death Act. *Chavez v. Regents of the Univ. of N.M.,* 103 N.M. 606, 609, 711 P.2d 883, 886 (1985). Cases interpreting our wrongful death act have made it clear that it is improper to equate a personal representative under the Wrongful Death Act with a personal representative as defined by the Probate Code:

Since the character of plaintiff as a personal representative under our statute is entirely foreign to and unconnected with his character as estate administrator, whatever authority he might have as such administrator is unimportant; and, since his authority to bring and maintain the action flows from the wrongful death statute itself and not from the probate, or estate, laws of this or any other state, it is incorrect to say that his power to sue in this connection should be tested by his authority to administer generally the estate of the deceased....

. . . .

. . . .

And, in this connection, it is well to notice how courts hold, with almost complete unanimity, that the fact that some statutes name the administrator or execu-

tor of the estate of the deceased as the person to sue is not to say that the recovery had belongs to the estate, is to be in any way involved in the estate, as such, is answerable for its debts or must, in any sense, be accounted for to the estate by such a representative, absent a situation calling for escheat to the state, one not present here.

The suit, under this act, clearly, has no relation to the estate. It is incidental that a "personal representative" (usually defined to be an executor or administrator, in one of the classes) is named to bring suit. It is not because this would fall within his duties as such, but because someone must be named and our Legislature has fixed upon such a person as the one to sue. *Henkel v. Hood,* 49 N.M. 45, 47, 156 P.2d 790, 791 (1945) (citation omitted). A Section 41–2–3 personal representative "need not . . . have the full powers required by the Probate Code, since his duties under the Wrongful Death Act are merely to act as a nominal party for all the statutory beneficiaries in order to centralize the claims and prevent multiple and possibly contradictory lawsuits." *Chavez,* 103 N.M. at 609, 711 P.2d at 886. "While the administrator [of the decedent's estate] may be the [wrongful death action] personal representative, there may be a personal representative who is not the administrator." *Stang v. Hertz Corp.,* 81 N.M. 69, 77, 463 P.2d 45, 53 (Ct.App.1969).

{9} The remarks of Appellants' counsel during oral argument in the district court demonstrate that Appellants sought appointment as the personal representative of Kirsten's estate not in order to administer what appears to be an asset-less estate, but because of counsel's belief that a Section 41–2–3 personal representative must be appointed in accordance with the probate code. We take this opportunity to re-emphasize that ap-

pointment as the personal representative of a decedent's *estate* is neither necessary nor sufficient authority for a person to serve as a Section 41–2–3 personal representative: the power to enter a judgment appointing a Section 41–2–3 personal representative "flows from the wrongful death statute itself and not from the probate, or estate, laws." *Henkel,* 49 N.M. at 47, 156 P.2d at 791.

{10} A person seeking appointment as a Section 41–2–3 personal representative is not required to proceed under the Probate Code and the substantive and procedural provisions of the Probate do not govern the appointment of a Section 41–2–3 personal representative.[1]

{11} In view of our holding that appointment as the personal representative of Kirsten's estate is neither necessary nor sufficient authority for Appellants to serve as Section 41–2–3 personal representatives in prosecuting an action for her wrongful death, we conclude that this appeal is moot to the extent it seeks review of the district court's order appointing Father as personal representative of Kirsten's estate.

### 2. The Actual Controversy: Who Will Share in the Recovery?

#### a. Mother's Interest Became Absolutely Vested upon Kirsten's Death

█ {12} Because Appellants mistakenly believed that the personal representative of Kirsten's estate would be the proper party to bring an action for Kirsten's wrongful death, they attempted to demonstrate to the district court that Father was not a suitable person to bring an action for Kirsten's wrongful death. In the course of litigating Father's suitability to bring a wrongful death action, Appellants raised an issue that remains a matter of active controversy between Appel-

---

1. The record includes a copy of a complaint filed by Father in the United States District Court for the District of New Mexico seeking recovery for Kirsten's wrongful death. In his complaint, Father requested that he be "confirmed" as the Section 41–2–3 personal representative. In view of the Supreme Court's holding that appointment as a Section 41–2–3 personal representative is not a jurisdictional prerequisite to bringing a wrongful death action, *Chavez v. Regents of the*

*University of New Mexico,* 103 N.M. 606, 711 P.2d 883 (1985), we see no reason why a petition for appointment of a Section 41–2–3 personal representative may not be brought with the wrongful death action itself, *see* Rules 1–002 and 1–018(A) NMRA 2002; NMSA 1978, § 44–6–4 (1975), assuming that all necessary parties, NMSA 1978, § 44–6–12 (1975), are subject to joinder in the forum where the wrongful death action is brought.

lants and Father: who will share in any recovery for Kirsten's wrongful death?

{13} This issue was fully litigated by the parties and was addressed by the district court's findings of fact and conclusions of law. The district court declared that "[Father] is the sole surviving parent[ ] of Kirsten Janay Sumler, and as such, is the sole beneficiary of the wrongful death claim for the death of Kirsten Janay Sumler." We conclude that even though this case nominally was a formal probate proceeding, the district court had jurisdiction to address issues arising under the Wrongful Death Act, *see* NMSA 1978, § 44–6–2 (1975) (providing that any person whose rights, status or other legal relations are affected by a statute may obtain a declaration of rights, status or other legal relations thereunder), and that we have jurisdiction to review the district court's rulings with respect to these issues, *see* NMSA 1978, § 44–6–8 (1975).

{14} Section 41–2–3 provides:

Every such action as mentioned in Section 41–2–1 NMSA 1978 shall be brought by and in the name or names of the personal representative or representatives of such deceased person, and the jury in every such action may give such damages, compensatory and exemplary, as they shall deem fair and just, taking into consideration the pecuniary injury or injuries resulting from such death to the *surviving* party or parties entitled to the judgment, or any interest therein, recovered in such action, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default. The proceeds of any judgment obtained in any such action shall not be liable for any debt of the deceased: provided, he or she shall have left a husband, wife, child, father, mother, brother, sister or child or children of the deceased child, but shall be distributed as follows:

First. If there be a *surviving* husband or wife, and no child, then to such husband or

wife; if there be a *surviving* husband or wife and a child or children or grandchildren, then equally to each, the grandchild or grandchildren taking by right of representation; if there be no husband or wife, but a child or children, or grandchild or grandchildren, then to such child or children and grandchild or grandchildren by right of representation; if such deceased be a minor, childless and unmarried, then to the father and mother, who shall have an equal interest in the judgment, *or if either of them be dead, then to the survivor;* if there be no father, mother, husband, wife, child or grandchild, then to a *surviving* brother or sister, or brothers or sisters, if there be any; if there be none of the kindred hereinbefore named, then the proceeds of such judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons.[2]

(Emphasis added).

{15} The terms "surviving" and "survivor" are not defined in the wrongful death act. In the absence of an express directive from the legislature, we are confronted with at least three plausible alternatives as to the point in time beyond which a beneficiary must live in order to be considered a survivor for purposes of Section 41–2–3: the date of the decedent's death; the date that the action is brought; or, the date that the personal representative recovers a judgment.

{16} Father argues that Section 41–2–3 is patterned on Missouri's wrongful death statute, and that under the principle of adopted construction we must follow the Missouri Supreme Court's decision in *Tobin v. Missouri Pac. Ry. Co.*, 18 S.W. 996 (Mo.1891). *Tobin* held that the phrase "if either of them be dead, then by the survivor," in the Missouri wrongful death statute "vest[ed] the right of action in the parents jointly, with the incident of survivorship in favor of either parent in event of *death of the other before judgment.*" *Id.* at 997 (emphasis added).

---

**2.** This lawsuit was brought in September 2000, and resulted in a final judgment dated February 2, 2001. Section 41–2–3 was amended by 2001 N.M. Laws, chapter 130, section 1. The revised version of Section 41–2–3, which was approved by the legislature on April 2, 2001, does not apply to this lawsuit.

■ {17} The rule of adopted construction is set out in *White v. Montoya:*

> It is a general rule based upon a presumed intent, that the adoption of a statute from another state includes its prior construction by the courts of that state, and the presumption is strong that the legislature did so intend. While the rule is not absolute, it should be followed unless the strong presumption is overthrown by stronger reasons or evidence that it was not adopted.

46 N.M. 241, 244, 126 P.2d 471, 473 (1942) (citations omitted).

■ {18} There is no question that New Mexico's original wrongful death statute was borrowed from Missouri. *Compare* 1882 N.M. Laws, ch. 61, §§ 1 to 4 *with* 1855 Mo. Laws ch. 51, §§ 1 to 4. Like the Missouri act construed in *Tobin,* the 1882 New Mexico act contained the phrase "if either of them be dead, then by the survivor." Because *Tobin* was not decided until 1891, it obviously could not have been considered by the New Mexico Legislature in enacting our original wrongful death statute in 1882. Realizing this, Father points out that the language "if such deceased be a minor, childless and unmarried, then to the father and mother, who shall have an equal interest in the judgment, or *if either of them be dead, then to the survivor*" in Section 41–2–3 was added by 1939 N.M. Laws, chapter 105, well after the Missouri Supreme Court decided *Tobin.* Thus, the legislature could have been aware of *Tobin* when it enacted the 1939 amendment. However, we consider it probable that the 1939 legislature simply borrowed the phrase, "if either of them be dead, then by the survivor" from Section 1 of 1882 N.M. Laws, chapter 61, rather than re-borrowing this language from Missouri. Thus, the operative rule of construction is not the principle of adopted construction, but rather the principle that interpretations by the courts of another jurisdiction subsequent to New Mexico's adoption of statutory language from that jurisdiction are to be considered "highly persuasive." *Ickes v. Brimhall,* 42 N.M. 412, 416, 79 P.2d 942, 944 (1938).

{19} In any event, the precedential value of *Tobin* is undercut by a crucial difference between the wrongful death statute interpreted by the Missouri Supreme Court in *Tobin* and Section 41–2–3. In 1891, the legislature substantially revised the provisions of the wrongful death act governing actions against defendants who are not common carriers. 1891 N.M. Laws, ch. 49. As a result of the 1891 revisions, Section 41–2–3 provides that the jury, in calculating damages, may "tak[e] into consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties entitled to the judgment." Unless the identities of the beneficiaries "entitled to the judgment" are ascertainable no later than the time of trial, the parties will not be in a position to present evidence as to the pecuniary injury to the surviving party or parties. UJI 13–1830(8) NMRA 2002 (providing that jury is to be instructed as to the identities of the surviving beneficiaries; instructing jury that "the presence or absence of a measurable monetary loss to beneficiaries is a factor for consideration"). The Missouri wrongful death statute construed in *Tobin* did not contain analogous language. Instead, the wrongful death statute provided for payment of $5,000, without regard to pecuniary injury. Under the Missouri statute, deferring vesting of the beneficiaries' respective interests until the recovery of judgment did not present the problems of proof that exist under a statute that allows the jury to consider the pecuniary injuries suffered by specific individuals in calculating damages. We think that the absence of any reference to pecuniary injury to the surviving beneficiaries in Missouri's wrongful death statute provides a basis for declining to apply to Section 41–2–3 *Tobin's* conclusion that survivorship is determined as of the date of judgment. *See Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903, 904–05 (Utah 1984) (noting that deference to construction of statute adopted from other jurisdiction by courts of other jurisdiction is not required where adopting state has made "material changes" to statute or where adopted language is given a "different setting" in the adopting state). We conclude that a construction of "survivor" that delays ascertainment of the identities of beneficiaries until a judgment is recovered is incompatible with Section 41–2–3.

{20} Our conclusion that the identities of the persons entitled to share in the proceeds of the judgment must be ascertainable no later than the time of trial still leaves us with two alternatives: vesting as of the decedent's death or vesting as of the date the suit is brought. We find support for the first option in our Supreme Court's decision in *Frampton v. Santa Fe Northwestern Ry. Co.,* 34 N.M. 660, 287 P. 694 (1930).

{21} In *Frampton,* a husband was killed while riding on a log train. He left a widow and three minor children. Within six months from the date of the husband's death, the widow brought suit under the predecessor to NMSA 1978, § 41–2–4 (1973), which provided that:

> Whenever any person shall die from any injury resulting from, or occasioned by the negligence ... of any officer, agent, servant or employee, whilst running ... any locomotive ... or train of cars ... and when any passenger shall die from any injury resulting from ... any defect or insufficiency in any railroad ... locomotive or car, ... the corporation ... shall forfeit and pay for every person or passenger so dying, the sum of five thousand dollars, which may be sued and recovered; First, by the husband or wife of the deceased; or second, if there be no husband or wife, or if he or she fails to sue within six months after such death, then by the minor child or children of the deceased; or third, if such deceased be a minor and unmarried, then by the father and mother....

*Frampton,* 34 N.M. at 661, 287 P. at 695 (quoting N.M.Code of 1915, § 1820). The district court entered judgment in favor of the defendant, and the widow appealed. While the widow's appeal was pending, she died. Her children, by their next friend, suggested her death and moved the Supreme Court for leave to revive the suit in the children's names. The defendant moved to dismiss on the ground that right of action did not survive the widow's death. The Supreme Court denied the motion to revive, holding that "when the widow brought suit within six months, as she did in this case, the right of action became absolutely vested in her." *Id.* at 661–62, 287 P. at 695. The Supreme

Court held that the children lacked standing to revive the action and that the proper party to continue the action was the personal representative of the widow's estate.

{22} We do not understand the statement "when the widow brought suit within six months, as she did in this case, the right of action became absolutely vested in her" to mean that the right to recover for her husband's wrongful death vested at the time of filing suit; rather, we understand the Supreme Court to have meant that, pursuant to the phrase "[F]irst, by the husband or wife or the deceased," the right to sue and recover immediately vested in the widow upon the death of the husband, subject, however, to divestiture under the second phrase should she not bring suit within six months. When the widow filed suit, thereby foreclosing the occurrence of the condition subsequent (failure to file suit within six months after husband's death), her rights as the surviving beneficiary with highest priority "became *absolutely* vested." This reading is confirmed by a consideration of the cases relied upon by the Supreme Court.

{23} As support for its holding in *Frampton,* the Supreme Court cited to *Chicago, B. & Q.R. Co. v. Wells–Dickey Trust Co.,* 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216 (1927). *Wells–Dickey* involved the following federal statute:

> Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, *or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee.*

275 U.S. at 162, 48 S.Ct. 73 (quoting Employers' Liability Act, 45 U.S.C., c. 2, § 51 (1908)) (emphasis added). In *Wells–Dickey,* the decedent was an employee of a railroad. He was survived by his mother, who died before suit could be brought. Thereafter, the administrator of the employee's estate brought suit for the benefit of a surviving sister. The railroad moved for a directed verdict on the

ground that "since the mother had died, the cause of action vested in her, and that, when she died, the cause of action died with her." 275 U.S. at 162, 48 S.Ct. 73. The trial court denied the motion for a directed verdict and the administrator obtained a verdict in favor of the sister. The defendant railroad appealed. The United States Supreme Court reversed, holding that "[t]he cause of action accrues at the death. When it accrues, there is an immediate, final and absolute vesting; and the vesting is in that one of the several possible beneficiaries who, according to the express provision in the statute, is declared to be compensated." *Id.* at 163, 48 S.Ct. 73 (citation omitted).

{24} In *Frampton*, our Supreme Court also relied upon *Hammond v. Lewiston, A. & W. St. Ry.*, 106 Me. 209, 76 A. 672 (1909). In *Hammond*, the husband was killed when he was struck by a passenger car operated by the defendant. The decedent was survived by his wife, but left no children. The wife died. Thereafter, the husband's sister and sole heir at law was appointed administratrix of husband's estate and brought suit for the benefit of herself under Maine's wrongful death statute, which provided that:

> Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of his widow, if no children, and of the children, if no widow, and if both, then of her and them equally, and, if neither, of his heirs. The jury may give such damages as they shall deem a fair and just compensation ... to the persons for whose benefit such action is brought, provided, that such action shall be commenced within two years after the death of such person.

76 A. at 673 (quoting Me.Rev.Stat. ch. 89, § 10).

{25} The Maine Supreme Court rejected the sister's argument that the beneficiaries should be determined as of the date of recovery and not as of the date of the husband's death. The court held that under the statute quoted above:

> the party for whose benefit the action is brought depends upon the nature of the family that is left, and four different conditions are provided for—widow without children, children without widow, widow and children, heirs at law. But in any event the immediate, absolute, and final vesting of the right occurs at the time of the decease, not at the time of bringing suit or of recovery.

76 A. at 673.

■ {26} Applying *Frampton*, *Wells–Dickey*, and *Hammond*, we hold that the interests of the beneficiaries entitled to share in the recovery for Kirsten's wrongful death "became absolutely vested" at Kirsten's death. Here, both Father and Mother survived Kirsten's death. Accordingly, the right to share in any recovery for Kirsten's wrongful death vested in "the father and mother, who shall have an equal interest in the judgment." Section 41–2–3. Upon Mother's death, Mother's beneficial interest in the judgment passed to Mother's estate. *Frampton*, 34 N.M. at 664, 287 P. 694. *Accord Van Beeck v. Sabine Towing Co., Inc.*, 300 U.S. 342, 349, 57 S.Ct. 452, 81 L.Ed. 685 (1937) (discussing *Wells–Dickey* ); *Dostie v. Lewiston Crushed Stone Co.*, 136 Me. 284, 8 A.2d 393, 396–97 (1939) (applying *Hammond* ); *Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608, 610–13 (Minn. 1988) (collecting cases); *see also* 17 Corpus Juris, *Death* § 78 (1919) (noting that under some wrongful death statutes, "the beneficiary's right is a property right which vests in the beneficiary at the time of decedent's death, and survives the subsequent death of the beneficiary for the benefit of his estate, to the exclusion of other person who would have been the beneficiaries if the deceased beneficiary had not survived the person wrongfully killed").

{27} Father points out that *Frampton* involved the common carrier wrongful death statute, which since its original enactment has provided that the beneficiaries themselves, rather than a personal representative, are to bring suit. We agree with Father that the argument for early vesting may be stronger where the beneficiaries are also the persons who must bring suit. Certainly, if the beneficiaries are to sue in their own names as plaintiffs, their identities must be

ascertainable by the time suit is brought. Under a statute such as 41–2–3 that designates the personal representative as the proper party to bring suit, this problem is less acute, *see* Rule 1–017(A) NMRA 2002, although, as we have noted, under Section 41–2–3 it is essential that the beneficiaries entitled to the judgment be ascertainable no later than the time of trial. We find it significant that *Frampton* relied on cases interpreting wrongful death statutes that required the suit to be brought by the decedent's personal representative. *Frampton's* reliance on *Wells–Dickey* and *Hammond* suggests to us that the Supreme Court did not consider the absence or presence of a personal representative *in the statutory* scheme to be determinative of the date the beneficiaries' interests vest.

{28} Father argues that our holding that the interests of the beneficiaries vest upon the death of the deceased denies the personal representative his role. Father's argument overlooks Rule 1–017(A) NMRA 2002, which states a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. Our holding that the beneficiaries' respective interests in any proceeds vest upon the death of the deceased does not conflict with the legislature's directive that "[e]very such action … shall be brought by and in the name or names of the personal representative."

■ {29} Father also argues that a rule of immediate vesting will result in the abatement of wrongful death actions upon the death of a beneficiary, thereby undermining the policy of promoting "safety of life and limb, by making negligence that causes death costly to the wrongdoer." *Hogsett v. Hanna,* 41 N.M. at 26–27, 63 P.2d 540, 544–45 (1936). Contrary to Father's assumption, the death of a beneficiary does not abate a Section 41–2–3 right of action because the right *to bring* the action is separate from the right to share in the proceeds of any recovery: under Section 41–2–3, the right of action survives to the Section 41–2–3 personal representative, not to the statutory beneficiaries. *Stang v. Hertz Corp.,* 81 N.M. 69, 79, 463 P.2d 45, 55 (Ct.App.1969) (observing that the wrongful

death act "preserves" the decedent's right of action and "transmits" it to the personal representative). *But cf. Frampton* (construing common carrier wrongful death statute, which vests right of action in beneficiary rather than personal representative; holding that death of beneficiary presents question of survival of right of action).

**b.** *Father Has Not Been Divested of His Interest*

■ {30} Appellants argue that Father should not be permitted to share in the recovery for Kirsten's wrongful death because he did not involve himself in Kirsten's upbringing and because he did not pay court-ordered child support after he was determined to be the biological father of Kirsten. In making these arguments Appellants ignore crucial findings made by the district court:

8. After the paternity suit, [Father] openly acknowledge[d] his daughter Kirsten; however, Amanda Sumler Smith denied and prohibited [Father] to see, visit or establish any type of relationship with his daughter.

9. [Father] did contribute to Kirsten's support through efforts of the Child Support Enforcement Offices for the State of New Mexico.

. . . .

17. [Father] had demonstrated his willingness to accept loving responsibility for his natural born children by taking sole custody of his two children born in 1996 and 1997 by a subsequently dissolved marriage.

18. [Father] would have given the same love, care and support to Kirsten if he had not been thwarted by the natural mother, Amanda Sumler Smith.

. . . .

24. The many shortcomings of [Father], as testified to concerning his relationship with his deceased daughter, Kirsten, was explained to the Court by the efforts of those involved to undermine the establishment of any such relationship.

{31} Appellants have not brought a proper challenge to these findings. Accordingly, the

above findings "shall be deemed conclusive." Rule 12–213(A)(4) NMRA 2001.

{32} In *Dominguez v. Rogers,* we observed that "[p]roof of natural-parent status is not necessarily sufficient for recovery under the wrongful death statute." 100 N.M. 605, 609, 673 P.2d 1338, 1342 (Ct.App.1983). We expressed our distaste for self-interested individuals who choose "to assert a parental status only when it becomes financially profitable ... following the death of a small child." 100 N.M. at 609, 673 P.2d at 1342. We recognized that the public policy of New Mexico, as expressed in NMSA 1978, § 45–2–109 (1975, as amended 1976), disfavors natural parents who do not acknowledge their responsibilities to their children. *Dominguez,* 100 N.M. at 609, 673 P.2d at 1342. We held open the possibility that a personal representative in a wrongful death action might be permitted to seek termination of a father's parental rights where there was evidence of non-support and abandonment. 100 N.M. at 609, 673 P.2d at 1342.

{33} We do not retreat from the sentiments expressed in *Dominguez.* However, in *Dominguez,* we noted the complete absence of any evidence that the natural father had acknowledged paternity at any time before the child's death. Here, in contrast, we have binding findings that Father openly acknowledged that he was Kirsten's father and had attempted to establish a parent-child relationship with Kirsten prior to her death, but was "thwarted" by the actions of Mother. These findings are sufficient to overcome any presumption of abandonment, *see In re Adoption of J.J.B.,* 119 N.M. 638, 648–50, 894 P.2d 994, 1004–06 (1995), and to materially distinguish this case from *Dominguez.*

{34} Appellants argue that Father's interest in the recovery for Kirsten's death is precluded by NMSA 1978, § 45–2–114(C) (1993), which provides that "[i]nheritance from or through a child by either natural parent or his kindred is precluded unless that natural parent has openly treated the child as his and has not refused to support the child." As we have explained above, the substantive standards of the Probate Code do not apply to wrongful death actions. Section 45–2–114(C) has no effect on Father's entitlement to wrongful death benefits. *See Aranda v. Camacho,* 1997–NMCA–010, 122 N.M. 763, 931 P.2d 757 (holding that NMSA 1978, § 45–2–803(B) (1995) does not affect spouse's entitlement to wrongful death benefits).

{35} We affirm the Judgment appointing Father as personal representative of Kirsten's estate. We reverse the district court's determination that Father is the sole Section 41–2–3 beneficiary of the action for Kirsten's wrongful death. We affirm the district court's determination that Father has not been divested of his interest in any recovery for Kirsten's wrongful death.

{36} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, and CELIA FOY CASTILLO, Judge.