Certiorari Denied, August 29, 2013, No. 34,255

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:   2013-NMCA-090

Filing Date:  June 3, 2013

Docket Nos. 32,176 & 32,180 (Consolidated)

**ESTATE OF DAVID SWIFT by**
**RICKY SWIFT, Personal Representative,**

  **Petitioner-Appellant,**

**v.**

**NICOLE BULLINGTON,**

  **Respondent-Appellee,**

**and**

**RICKY D. SWIFT and MARY L. SWIFT,**

  **Petitioners-Appellants,**

**v.**

**NICOLE BULLINGTON,**

  **Respondent-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Violet C. Otero, District Judge**

Lori Bauer Apodaca
Los Lunas, NM

for Appellants

New Mexico Legal Aid, Inc.
Petra E. Rogers
Albuquerque, NM

1

for Appellee

**OPINION**

**VANZI, Judge.**

**{1}** In this consolidated appeal, we address whether a personal representative of a decedent's estate has standing to bring an action for an adjudication of parentage under the New Mexico Uniform Parentage Act (UPA), NMSA 1978, §§ 40-11A-101 to -903 (2009). In the proceedings below, the district court dismissed a paternity action filed by Ricky Swift, the personal representative of the estate of his son, on the basis that a personal representative lacks standing under the UPA to bring an action to adjudicate paternity. Upon dismissing the paternity action, the district court also dismissed a separate action for grandparent visitation privileges that was brought by Ricky Swift and Mary Swift in their capacity as the putative grandparents of the child.

**{2}** We hold that a personal representative has standing as a representative authorized by law to bring an action to adjudicate parentage pursuant to Section 40-11A-602(F) of the UPA. *See id.* (providing that a proceeding to adjudicate parentage may be maintained by "a representative authorized by law to act for a person who would otherwise be entitled to maintain a proceeding but who is deceased, incapacitated or a minor"). Because the district court concluded otherwise, we reverse its dismissal of both the paternity action as well as the grandparent visitation action.

**BACKGROUND**

**{3}** David Swift (Swift) was the putative father of a child whom Respondent-Appellee Nicole Bullington (Mother) gave birth to in September 2010. Swift committed suicide approximately six months prior to the birth of the child. On December 9, 2010, Swift's father, Ricky Swift (Personal Representative), in his capacity as the personal representative of his son's estate, filed a petition in district court seeking an adjudication of the child's paternity. Hand-written on the face of the petition was the statement that "the [e]state basically wants to clarify whether David Swift is the father [of the child]" and "seeks genetic testing." Attached to the petition was a document filed in a separate probate proceeding establishing Ricky Swift's appointment as Personal Representative of his son's estate.

**{4}** Mother filed a motion to dismiss the Personal Representative's petition to establish paternity, arguing that the Personal Representative lacked standing to maintain such a proceeding under the UPA and the New Mexico Uniform Probate Code (Probate Code), NMSA 1978, §§ 45-1-101 to -404 (1975, as amended through 2011). Mother further asserted that, under New Mexico law, a cause of action to establish paternity does not survive the death of the putative father. The district court subsequently held a hearing on Mother's motion to dismiss, at which time the court requested that the parties fully brief the issue of the Personal Representative's standing under New Mexico law. After briefing was

2

completed, the district court held a second hearing at which it entered an oral ruling dismissing the paternity action based on its determination that the Personal Representative lacked standing. A written order was later entered dismissing the paternity action.

**{5}** In addition to the paternity action above, Ricky Swift and his wife, Mary Swift, filed a separate action in district court seeking grandparent visitation privileges with the child. The district court dismissed the grandparent visitation action at the same hearing as the paternity action. The written order dismissing the visitation action stated that the case was being dismissed because it was "premised on standing which does not exist."

**{6}** Separate appeals were filed from the district court's dismissal of the paternity action and the grandparent visitation action. The appeals were consolidated by this Court, and we now address each appeal in turn.

**DISCUSSION**

**A. Dismissal of Paternity Action**

**{7}** The UPA governs determinations of parentage in New Mexico. Section 40-11A-103(A). Section 40-11A-602 of the UPA specifies that the following individuals or entities have standing to maintain a proceeding to adjudicate parentage:

> A. the child;
>
> B. the mother of the child;
>
> C. a man whose paternity of the child is to be adjudicated;
>
> D. the support-enforcement agency;
>
> E. an authorized adoption agency or licensed child-placing agency; or
>
> F. a representative authorized by law to act for a person who would otherwise be entitled to maintain a proceeding but who is deceased, incapacitated or a minor.

In this case of first impression, the putative father of the child passed away prior to the child's birth and the filing of the parentage action in district court. The sole issue before us on appeal is whether the Personal Representative of the putative father's estate had standing to bring the parentage action under Section 40-11A-602(F) as "a representative authorized by law to act for a person who would otherwise be entitled to maintain a proceeding but who is deceased[.]" On appeal, the Personal Representative argues that the district court erroneously determined that a personal representative lacks standing within the meaning of Section 40-11A-602(F) and also erred in determining that a paternity action does not survive

3

the death of the putative father.

**{8}** Whether a party has standing to bring a claim is a question of law that we review de novo on appeal. *Disabled Am. Veterans v. Lakeside Veterans Club, Inc.*, 2011-NMCA-099, ¶ 9, 150 N.M. 569, 263 P.3d 911. "Where the Legislature has granted specific persons a cause of action by statute, the statute governs who has standing to sue." *San Juan Agric. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 8, 150 N.M. 64, 257 P.3d 884. In determining whether a personal representative has standing to bring a parentage action under the UPA, "[t]he entire statute is to be read as a whole so that each provision may be considered in its relation to every other part." *Id.* ¶ 9 (internal quotation marks and citation omitted). We begin by examining "the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different meaning was intended." *Disabled Am. Veterans*, 2011-NMCA-099, ¶ 13 (alteration, internal quotation marks, and citation omitted). "When a statute contains language that is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Id.* (alterations, internal quotation marks, and citation omitted).

**{9}** As noted above, Section 40-11A-602(F) of the UPA grants standing to maintain a parentage action in district court to "a representative authorized by law to act for a person who would otherwise be entitled to maintain a proceeding but who is deceased[.]" Based on the plain language of this provision, we conclude that the district court erred in determining that a personal representative of the estate of an individual who would otherwise be entitled to maintain a parentage proceeding—in this case, the putative father—does not qualify as a "representative authorized by law" under Section 40-11A-602(F). It is generally well established that a personal representative is an individual legally authorized to act on behalf of a decedent. *See Black's Law Dictionary* 1416 (9th ed. 2009) (defining "personal representative" as "[a] person who manages the legal affairs of another because of incapacity or death"). This Court has stated that "[i]n probate law, [the term] 'personal representative[]' refers generally to persons with the duty of settling and distributing a decedent's estate under the supervision of a court, and includes executors and administrators." *In re Estate of Sumler*, 2003-NMCA-030, ¶ 8, 133 N.M. 319, 62 P.3d 776; *see* NMSA 1978, § 45-3-703 (2011) (describing general duties and powers of personal representatives). The Probate Code further provides that "[e]xcept as to proceedings that do not survive the death of the decedent, a personal representative of a decedent domiciled in New Mexico at the decedent's death has the *same* standing to sue and be sued in the courts of New Mexico and the courts of any other jurisdiction as the decedent had immediately prior to death." Section 45-3-703(E) (emphasis added). Thus, based on the general duties and powers of a personal representative to act on behalf of a decedent, it is readily apparent that a personal representative qualifies as a "representative authorized by law" to act on behalf of a decedent within the meaning of Section 40-11A-602(F).

**{10}** We observe that at least one other state that has adopted the UPA has found that a personal representative of a putative father's estate has standing to bring an action to adjudicate parentage. In *R.F. v. M.M.*, 2010 ND 195, ¶ 3, 789 N.W.2d 723, the North

4

Dakota Supreme Court considered a case where a grandfather in his individual capacity filed an action to establish paternity of an alleged grandchild and to obtain grandparent visitation privileges. The grandfather later amended the action to clarify that he was also bringing the paternity action in his capacity as the personal representative of the estate of his son, the putative father of the child. *Id.* The North Dakota Supreme Court determined that the grandfather, as the personal representative, had standing to bring the paternity action under the North Dakota UPA standing provision that is identical to Section 40-11A-602. *R.F.*, 2010 ND 195, ¶¶ 6, 13. Although Mother argues that *R.F.* is distinguishable because the respondent in that case conceded that the grandfather had standing after he was appointed as a personal representative, *id.* ¶ 9, we observe that, despite this concession, the North Dakota Supreme Court expressly concluded in its analysis of the standing issue that the grandfather's "appointment as a personal representative gave him standing to bring a paternity action." *Id.* ¶ 13. We therefore consider the case to be persuasive authority that a personal representative has standing to maintain a paternity action under Section 40-11A-602 of the UPA.

**{11}** Mother contends that the Probate Code only grants a personal representative the authority to bring causes of action that survive the decedent's death, and a paternity action is not a type of action that survives a putative father's death. *See* § 45-3-703(E) (providing that a personal representative has the same standing as the decedent to maintain an action on behalf of the decedent "[e]xcept as to proceedings that do not survive the death of the decedent"). Mother argues that a paternity action does not survive a putative father's death because a paternity action did not exist at common law and the Legislature has not enacted any statute authorizing the survival of a paternity action following the death of the putative father. We disagree with Mother's argument for several reasons.

**{12}** First, by adopting the UPA, the Legislature has provided statutory authority that a parentage action can be maintained after the death of a putative father. Provisions of the UPA clearly contemplate that a parentage action can be maintained after the death of the putative father. A prime example is the standing provision itself that is at issue in this appeal, Section 40-11A-602, which provides that a parentage action can be maintained on behalf of a deceased individual who would otherwise be entitled to maintain a proceeding but for his/her death. In addition, the venue provision, Section 40-11A-605(C), states that venue for a proceeding to adjudicate parentage is proper in the county where "a proceeding for probate or administration of the presumed, acknowledged or alleged father's estate is pending." And one of the statute of limitations provisions of the UPA provides that a child with no presumed, acknowledged, or adjudicated father may commence a parentage proceeding "at any time, even after . . . the child becomes an adult[.]" Section 40-11A-606(A)(1). Given this extraordinary statute of limitations, it is certainly conceivable that a child could initiate a paternity action after the death of the putative father.

**{13}** Second, although decided under a prior version of the UPA, this Court in *In re Estate of DeLara*, 2002-NMCA-004, 131 N.M. 430, 38 P.3d 198, has previously considered the issue of parentage adjudications occurring after the death of the putative father. In *DeLara*,

a mother filed an action to establish paternity and obtain child support against a deceased putative father, naming the personal representative of the putative father's estate as the respondent in the action. *Id.* ¶¶ 3-4. We reversed the district court's ruling that the claim for child support could not proceed against the father's estate because no action for paternity or child support had been filed prior to the father's death. *Id.* ¶ 1. Relying on the venue provision in an earlier version of the UPA, which remains substantively similar to the current venue provision,[1] we stated that the venue provision "clearly envisions a suit under the UPA after the death of the father." *Id.* ¶¶ 8-9. In addressing whether an action to establish paternity and obtain child support must be filed prior to the father's death, this Court stated that "[t]he UPA's only express limitation *on a paternity* . . . action depends on the age of the child, not on the death of the father, nor on whether suit was filed before the father died." *Id.* ¶ 13 (emphasis added). The Legislature did not intend to "require [a paternity and support] action [to be filed] prior to the father's death as a prerequisite to filing a claim against the father's estate." *Id.* Under the current UPA, the limits on when a parentage proceeding may be initiated also do not depend on whether the proceeding was initiated prior to the death of the father.[2] Thus, although *DeLara* was decided under a prior version of the UPA, its reasoning is persuasive and further supports our determination that the UPA permits a parentage proceeding to be initiated after the death of the putative father.

{14}     Third, we are not persuaded by the cases from other jurisdictions relied upon by Mother that have held that a paternity action does not survive the death of a putative father. Several of the cases are from jurisdictions that have not adopted the UPA and are thus distinguishable due to the lack of specific statutory authority as to whether a paternity action survives the death of the putative father. *See, e.g.*, *Bullock v. J.B.*, 725 N.W.2d 401, 403-05 (Neb. 2006); *K.K. v. Estate of M.F.*, 367 A.2d 466, 468 (N.J. Super. Ct. Ch. Div. 1976); *Bell v. Setzer*, 375 So. 2d 61, 62 (Fla. Dist. Ct. App. 1979). In fact, the only case relied upon by Mother where the UPA has been adopted held that a paternity claim survives the death of

---

[1]Although the venue provision in the earlier version of the UPA is not identical to the current provision, both provide that venue is proper in the county where probate of the putative father's estate is pending. *Compare* § 40-11A-605 (stating that venue for a proceeding to adjudicate parentage is proper in the county where "a proceeding for probate or administration of the presumed, acknowledged or alleged father's estate is pending"), *with* § 40-11-8(C) (providing that if the father is deceased, an "action may be brought in the county in which . . . proceedings for probate of his estate have been or could be commenced") (1986, repealed effective January 1, 2010).

[2]Section 40-11A-606(A) provides that an adjudication of parentage may be commenced *by the child* "at any time," while any other proceeding to adjudicate parentage is to be commenced "not later than three years after the child has reached the age of majority," pursuant to Section 40-11A-607(B). A proceeding to adjudicate child support "shall be brought not later than three years after the child has reached the age of majority." Section 40-11A-607(A).

the putative father because "[a]n action brought under the [UPA] is an equitable action," and paternity claims are equitable in nature. *See Ex parte L.F.B.*, 599 So. 2d 1179, 1181-82 (Ala. 1992). In addition, Mother's reliance on cases that have held that a paternity action abates where the death of the father occurs during the pendency of a paternity action is misplaced. *See Bullock*, 725 N.W.2d at 403-05 (holding that a paternity action filed prior to the putative father's death did not survive his death and could not be revived by the personal representative of the father's estate because a paternity action is personal in nature and does not survive the death of the putative father). Unlike *Bullock* and the cases cited therein, our Legislature has specifically enacted an anti-abatement statute for paternity actions. *See* NMSA 1978, § 40-4-20(B) (1993) ("Upon the filing and service of a petition for . . . determination of paternity. . . , if a party to the action dies during the pendency of the action, but prior to the . . . determination of paternity, the proceedings for the determination . . . of paternity shall not abate. The court shall conclude the proceedings as if both parties had survived."). As a final matter, we note that Mother cites to cases that have held that a paternity action does survive the death of the putative father, thereby acknowledging the split of authority that exists in other jurisdictions on this issue. *See, e.g.*, *In re M.E.W.F.*, 600 P.2d 108, 108 (Colo. Ct. App. 1979) (holding that a paternity action survives the death of the putative father because paternity actions are not listed as an exception in Colorado's survival statute); *Ex parte L.F.B.*, 599 So. 2d at 1182 (holding that a personal representative had standing to bring a paternity action on behalf of a deceased father). Regardless of this split in authority, we nevertheless conclude that, based on the plain language of Section 40-11A-602 and other statutory provisions of the UPA, as well as our case law, a paternity action in New Mexico may be instituted after the death of the putative father.

**{15}**     Thus, we hold that a personal representative of the estate of an individual who would otherwise be entitled to maintain a parentage proceeding but for his/her death has standing to bring an action to adjudicate parentage under Section 40-11A-602(F) of the UPA. Accordingly, we reverse the district court's dismissal of the paternity action filed by the Personal Representative of Swift's estate.

## B.     Dismissal of Grandparent Visitation Action

**{16}**     The district court based its dismissal of the grandparent visitation action on the dismissal of the paternity action. Our review of the record indicates that the district court's determination that the grandparents lacked standing to bring the visitation action was premised solely on its earlier ruling that the grandfather, as Personal Representative of his deceased son's estate, lacked standing to adjudicate parentage in the paternity action. Having concluded that the district court erred in dismissing the paternity action on the basis of a lack of standing, we also reverse the district court's dismissal of the grandparent visitation action.

## CONCLUSION

**{17}**     For the reasons stated above, we reverse the district court's dismissal of both the

7

paternity and the grandparent visitation actions, and we remand for further proceedings consistent with this Opinion.

**{18}   IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Chief Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**Topic Index for *Swift v. Bullington*, Nos. 32,176/32,180**

**APPEAL AND ERROR**
Standard of Review

**CHILDREN**
Uniform Parentage Act

**CIVIL PROCEDURE**
Standing

**DOMESTIC RELATIONS**
Grandparents
Paternity
Visitation Rights

**WILLS, TRUSTS, AND PROBATE**
Personal Representative
Probate Law, General

**STATUTES**
Legislative Intent
Rules of Construction